# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRY L. HERB, | : | |
| Plaintiff | : | 3:11-CV-1637 |
| v. | : | |
| | : | (JUDGE NEALON) |
| CITIMORTGAGE, INC., | : | |
| Defendant | : | |

FILED SCRANTON JUL - 8 2013 PER ___ DEPUTY CLERK

## MEMORANDUM

On July 21, 2011, Plaintiff, Terry L. Herb, filed a complaint to quiet title in the Court of Common Pleas of York County, Pennsylvania against Defendant, Citimortgage, Inc., seeking an order quieting the title to the property at 333 Newcomer Road, Windsor, Pennsylvania and an order stating that a certain mortgage is not a lien on the property. (Doc. 1-2, pp. 3-26). Defendant removed the matter to this Court on August 31, 2011 based on diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1). Following discovery, Plaintiff moved for summary judgment on February 27, 2013 by filing a motion, statement of facts, and brief in support with exhibits. (Docs. 13-15). On April 4, 2013, Defendant filed a cross-motion for summary judgment, brief with exhibits, and statement of facts. (Docs. 18-20). On April 22, 2013, Plaintiff filed a brief in opposition and answer to the statement of facts and on May 6, 2013 Defendant filed a reply brief. (Docs. 21-23). The cross motions for summary judgment are now ripe for disposition and, for the reasons set forth below, both motions will be denied.

## I. STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). All inferences "should be drawn in the light most favorable to the nonmoving party, and where the nonmoving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Pastore v. Bell Tel. Co., 24 F.3d 508, 512 (3d Cir. 1994), quoting Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

## II. STATEMENT OF FACTS

Plaintiff was the sole owner of the subject property, 333 Newcomer Road, Windsor, Pennsylvania, from July 27, 1987 until June 18, 1999. (Doc. 14, ¶¶3 & 5) admitted in (Doc. 20, ¶¶ 3 & 5). Plaintiff married Scott Herb in 1990. (Doc. 14, ¶4) admitted in (Doc. 20, ¶4). On June 18, 1999, Plaintiff deeded the subject property to herself and her husband, Scott W. Herb, forming a tenancy by the entirety.[1] (Doc. 15-6, pp. 1-3) (deed dated June 18, 1999 with Grantees

---

[1]Plaintiff and Defendant in their briefs assume that Plaintiff and Scott Herb owned the property as a tenancy by the entirety. (Doc. 15, pg 14), (Doc. 19, p. 13), & (Doc. 21, p. 5). However, in Plaintiff's statement of material facts she alleges, and Defendant, in its response, admits that they took the property as "joint tenants." (Doc. 14, ¶5) admitted in (Doc. 20, ¶5). A review of the deed reveals it was conveyed to Plaintiff and Scott Herb as "husband and wife".

2

"Scott W. Herb and Terry L. Herb, husband and wife"). A house was constructed on the property and Scott Herb used credit cards to pay off the debt incurred from the construction. (Doc. 14, ¶6) admitted in (Doc. 20, ¶6). Plaintiff and Scott Herb took out loans to consolidate the credit card debt. (Doc. 14, ¶7) admitted in (Doc. 20, ¶7). On June 18, 1999, Plaintiff and Scott Herb signed a thirty-year loan in the amount of $138,000 with The Drovers & Mechanics Bank and a mortgage on the subject property securing the loan which were both filed with the Recorder of Deeds of York County, Pennsylvania. (Doc. 19-6); see also (Doc. 19-3, pp. 25-26). On April 23, 2002, Plaintiff and Scott Herb signed a five-year loan in the amount of $28,000 and a fifteen-year loan in the amount of $50,000 with Drovers Bank, a Division of Fulton Bank. (Docs. 19-7 & 19-8) see also (Doc. 19-3, pp. 25-26). Mortgages securing both loans with the subject property were signed by Plaintiff and Scott Herb, and both the loans and the mortgages were filed with the Recorder of Deeds of York County, Pennsylvania. (Docs. 19-7 & 19-8); see also (Doc. 19-3, pp. 25-26). Plaintiff interchangeably signed these documents as "Terry L. Herb" and as "TL Herb." (Docs. 19-6, 19-7, & 19-8); see also (Doc. 19-3, p. 26).

On April 28, 2003, the three loans were refinanced into one loan with Allfirst, a Division of M & T Trust Company, in the amount of $207,544.00. (Doc. 19-10); (Doc. 14, ¶9) admitted in (Doc. 20, ¶9); see also (Doc. 19-3, p. 27) and (Doc. 19-14). The Allfirst loan is solely in the name of Scott W. Herb and was solely signed and initialed by him. (Doc. 19-10); (Doc. 14, ¶9) admitted in (Doc. 20, ¶9). The Allfirst loan was secured by a mortgage listing "Borrower" as "Scott W Herb, A MARRIED MAN, and TERRY L. HERB, his wife," and initialed "SH" and

---

(Doc. 15-6, pp. 1-3). When a property is conveyed to a husband and wife it is presumed that a tenancy by the entireties is formed. <u>Brenner v. Sukenik</u>, 410 Pa. 324, 330 189 A.2d 246 (1963).

"TLH" on every page and signed "TL Herb" under Terry L. Herb. (Doc. 19-11) and (Doc. 19-3, p. 31)[2]. Plaintiff was not present at the April 28, 2003, closing for the refinance. See (Doc. 14, ¶10); (Doc. 19-12, ¶9) (Declaration of Scott W. Herb); (Doc. 19-3, pp.10-11) (Deposition of Plaintiff); see also (Doc. 15-7, p. 18) (Deposition of Notary Public Shelley Pinckney); (Docs. 19-9 & 19-10) (Closing documents including a U.S. Department of Housing & Urban Development Settlement Statement and a "SIGNATURE/NAME AFFIDAVIT" signed solely by Scott Herb).

Plaintiff testified that she knows for a fact that she did not sign or initial the mortgage document at any time. (Doc. 19-3, p. 32). Whereas, Plaintiff's husband, Scott Herb, declares that, subsequent to the closing held on April 28, 2003, Plaintiff signed and initialed the mortgage. (Doc. 19-12, ¶9) (Declaration of Scott W. Herb). A "FINAL TRUTH-IN-LENDING DISCLOSURE" and a "NOTICE OF RIGHT TO CANCEL," bank closing documents for the loan in question, contain the signature "Scott W. Herb" with the date "4/28/03" and the signature "TL Herb" with the date "4-29-03." (Docs. 19-18 & 19-19).

III. DISCUSSION

A. Plaintiff's motion for summary judgment

Plaintiff argues that "[t]he undisputable facts show that the signature and initials that appear on the recorded mortgage documents are not her signature and initials and were not placed there by her hand," and because "[t]here is no dispute of fact that the mortgage was forged" it should be held invalid. (Doc. 15, pp. & 12). Plaintiff also states that "[t]here is no

---

[2]The copy of the mortgage attached to Defendant's brief in opposition does not contain document page 15, but based on Plaintiff's deposition testimony, it is concluded that the signature "TL Herb" is contained on said page. Plaintiff attaches an original copy of the mortgage which does not list Plaintiff as a signee. (Doc. 15-4).

4

evidence contradicting the fact that Plaintiff had no part in the execution of the mortgage." (Doc. 15, p. 15). The Undersigned does not agree with these contentions. Based on the declaration of Plaintiff's husband, Scott W. Herb, that the Plaintiff did sign and initial the mortgage, a genuine issue of material fact exists. See (Doc. 19-12, ¶9). Accordingly, Plaintiff's motion for summary judgment based on this premise, that there is no dispute that Plaintiff did not sign the mortgage, will be denied.

Secondly, Plaintiff points out that the alleged forged signature was not properly notarized prior to recording. (Doc. 15, pp. 10 & 12). Plaintiff argues that such an acknowledgment before a Notary Public prior to recording is required by 21 P.S. §42 and 21 P.S. §291.1. (Doc. 15, p. 10). In other words, Plaintiff is arguing that even if the signature on the mortgage is Plaintiff's, because it was added after the closing and not properly notarized, the mortgage was defectively acknowledged and is, therefore, invalid. Defendant argues that 21 P.S. §42 and 21 P.S. §291.1 only govern deeds and not mortgages and, regardless, a defective acknowledgment of a mortgage may affect the recordation and perfection of a mortgage but does not affect the validity of the mortgage between the parties. (Doc. 19, p. 15), citing Krasny v. Deutsche Bank Nat'l Trust Co. (In re Batipps), 460 B.R. 841, 844 (Bankr. E.D. Pa. 2011).

The statutes in question are applicable to mortgages as mortgages are conveyances under Pennsylvania law. See U.S. v. Crissman, 2011 U.S. Dist. LEXIS 110705, *15 n.2 (Bankr. M.D. Pa. 2011), citing Sovereign Bank v. Schwab, 414 F.3d 450, 453 n.5 (3d Cir. 2005); see also Pines v. Farrell, 577 Pa. 564, 574 (Pa. 2004) (finding a mortgage is in essence a defeasible deed and is a conveyance of title). However, Defendant is correct in that the cited statutes as well as 21 P.S. §§444 and 621, which pertain to the proper acknowledgment and recording of conveyances in

land, were intended to protect subsequent mortgagees and purchasers. See Crissman, 2011 U.S. Dist. LEXIS 110705 at n.3 (21 P.S. §§621, 444 and 351 read together, establish that a deed or mortgage not timely recorded is not an absolute void, but is void only to the extent necessary to protect the rights of a subsequent bona fide mortgagee or purchaser for value.). "An acknowledgment is an essential prerequisite for recording a mortgage, but is not necessary for the validity of the instrument." Schwab v. Home Loan & Inv. Bank, FSB (in re Messinger), 281 B.R. 568, 573 (Bankr. M.D. Pa. 2002), citing Abraham v. Mihalich, 330 Pa. Super. 378, 382, 479 A.2d 601, 603 (1984) and 21 P.S. § 42. "When a deed has been signed and delivered, it is valid and binding between the parties. The acknowledgment and certificate thereof are not part of the document. The acknowledgment does not relate to the validity of the deed in any way, and only establishes recording eligibility." Id. at 574; see also Batipps, 460 B.R. at 844 ("It is settled law in Pennsylvania that, while a defective acknowledgment may affect the recordation and perfection of a mortgage, such a defect does not affect the validity of the mortgage between the parties inter sese."). Although, here, the mortgage is allegedly not properly notarized, Plaintiff cannot avoid the consequences of the mortgage as to her based on this defect in the acknowledgment and recording. See Batipps, 460 B.R. at 844 (debtors have no ground for setting aside a mortgage that was executed "outside the presence of a Notary"); Bell v. Parkway Mortg., Inc. (In re Bell), 309 B.R. 139, 2004 Bankr. LEXIS 733 (Bankr. E.D. Pa. 2004) (fact that mortgage was not notarized in the debtor's presence did not void the mortgage as to debtor), modified and rehearing denied by 314 B.R. 54, 2004 Bankr. LEXIS 1322, 59 Fed. R. Serv. 3d (Callaghan) 763 (Bankr. E.D. Pa. 2004); and Messinger, 281 B.R. at 574 (notary not being present and witnessing signatures is a latent defect). Plaintiff's signature not being properly

6

notarized does not affect the validity of the instrument as to her. Accordingly, Plaintiff's motion for summary judgment will be denied.

**B. Defendant's motion for summary judgment**

Defendant first argues that even if it is determined that Plaintiff did not sign the mortgage, it is still valid based on the "entireties presumption" that a contract is binding against both spouses until a spouse establishes that the contracting spouse was not authorized to bind the other. (Doc. 19, p. 13). Specifically, Defendant argues that Plaintiff authorized her husband to manage their loans and finances and that Plaintiff benefitted from the lower interest loan which paid off the prior loans for which she was personally responsible and which were used to build her home. (Doc. 19, p. 3). Defendant maintains that courts have applied the entireties presumption to real estate contracts and mortgages executed by only one spouse. (Doc. 19, p. 13) & (Doc. 23, p. 6), citing, inter alia, Deutsche Bank Nat'l Trust Co. v. Evans, 421 B.R. 193, 197 (Bankr. W.D. Pa. 2009); Aetna Life & Cas. Corp. v. Maravich, 824 F.2d 266, 270 (3d Cir. 1987) (spouse was jointly liable for debt to contractor who repaired house despite not expressly contracting with contractor); Schweitzer v. Evans, 360 Pa. 552, 555-56, 63 A.2d 39, 41 (Pa. 1949). Defendant contends, therefore, through the "entireties presumption" Scott Herb had the required authority to bind the property with the mortgage. (Doc. 32, p. 5).

"A conveyance of either real or personal property to a husband and wife, without more, vests in them an estate by the entireties and upon the death of either, the survivor takes the whole." Plastipak Packaging, Inc. v. Depasquale, 937 A.2d 1106, 1109 (Pa. Super. 2007), citing Heatter v. Lucas, 367 Pa. 296, 298, 80 A.2d 749, 751 (1951). With regards to entireties property, "[n]either spouse may convey any interest in the estate without the other's authority or consent,

7

nor perform any act or make any contract respecting the property which would prejudicially affect the other, for it belongs equally to both, and each has a joint right with the other to its possession, use and enjoyment during the existence of the marriage." Schweitzer, 63 A.2d at 40-41. "Pennsylvania law presumes that either holder of entireties property may act for both without specific authority so long as the benefit of such action inures to both." In re Estate of Matson, 374 Pa. Super. 61, 71, 542 A.2d 147, 152 (1988), citing Bradney v. Sakelson, 325 Pa. Super. 519, 473 A.2d 189 (1984). However, Pennsylvania courts have invalidated conveyances in entireties property where a husband neither executed the deed, authorized a spouse to sign for him, nor had such notice of the transaction to estop him from asserting his rights. Warehouse Builders & Supply, Inc., v. Perryman, 215 Pa. Super. 413, 416, 257 A.2d 349, 351 (Pa. Super. 1969), citing Stanko v. Males, 390 Pa. 281, 135 A.2d 392 (Pa. 1957).

Defendant cites to Deutsche Bank Nat'l Trust Co. v. Evans, 421 B.R. 193 (W.D. Pa. 2009), in which the United States District Court for the Western District of Pennsylvania, held that the entireties presumption should apply to a mortgage executed by a husband where the non-signing wife had knowledge of and consented to the granting of the mortgage which inured to the benefit of both spouses with the completion of the family home. Evans, 421 B.R. at 197. There, the husband and wife argued that the Statute of Frauds required the mortgage be executed in writing by both. Id. The Court held, however, that the Statute of Frauds does not expressly cover mortgages, that it "is to be used as a shield" against fraud and perjury and "not as a sword" to escape contracts, and "where perjury or fraud is impossible, there is no room for the statute." Id. at 197, citing Schuster v. Pennsylvania Turnpike Com., 395 Pa. 441, 149 A.2d 447, 451 n.11 (Pa. 1959) (quoting Christy et al. v. Brien et al., 14 Pa. 248, 250 (1850); and citing Valvano v.

8

Galardi, 363 Pa. Super. 584, 591, 526 A.2d 1216 (Pa. Super. 1987); Fannin v. Cratty, 331 Pa. Super. 326, 480 A.2d 1056, 1059 (Pa. Super. 1984)). The Court differentiated Schweitzer, also cited by Plaintiff, noting that the surviving, non-signing Schweitzer did not enter into, benefit from, or acquiesce in the lease. Id. at 198. The Court held that the entireties presumption applies and there is no danger of fraud, and accordingly, the mortgage is fully enforceable. Id. at 202.

There are also courts that have held that the Statute of Frauds is applicable to mortgages requiring signing by both spouses. In Pope v. Interbay Funding LLC (In re Carnes), 331 B.R. 229 (Bankr. W.D. Pa. 2005), the Bankruptcy Court for the United States District Court for the Western District of Pennsylvania, prior to the decision in Evans, decided "whether a mortgage on entireties property which is signed by only one spouse is enforceable." 331 B.R. at 232. The Court assumed that the non-signing spouse was aware of and consented to the mortgage to purchase the property and that the benefit of the mortgage inured to both spouses. Id. However, the Court found the mortgage was unenforceable under Pennsylvania law based on the Statute of Frauds. Id. Because a mortgage is a conveyance of land, the Court held, the absence of a "signed statement" vesting authority to execute the mortgage in another renders the mortgage unenforceable. Id., citing In re Nespoli, 1998 Bankr. LEXIS 1666, 1998 WL 918878 (Bankr. M.D. PA, 1998); In re Butz, 1 BR 435, 437 (Bankr. E.D. PA 1979) ("Any attempt by a husband to alienate or encumber the estate of the entireties absent the wife's joinder violates the Statute of Frauds and is unenforceable against the wife."); Salzman v. Miller, 471 Pa. 104, 369 A.2d 1216 (1977); In re Farris, 194 BR 931, 939 (Bankr. E.D. PA 1996). ("Debtor's signature on the Mortgage was necessary to encumber the Residence and provide Jefferson with the legal right to proceed against the property in the event of a default under the Loan.").

In Nespoli, the Bankruptcy Court for the United States District Court for the Middle District of Pennsylvania analyzed whether one spouse, who alleges that she did not sign the loan documents but who alleges they were "forged," authorized another to act on her behalf. Nespoli v. PNC Bank, N.A. (In re Nespoli), 1998 Bankr. LEXIS 1666, *2 (Bankr. M.D. Pa. 1998). The Court noted that no agency relationship had been established or that the spouse was aware of the loan or benefitted from the loan. Id. at *4-5. The Court held that "[t]he authority to execute a conveyance of land must be in writing." Nespoli, 1998 Bankr. LEXIS 1666 at *2, citing Lehner v. Montgomery, 180 Pa. Super. 493, 119 A.2d 626 (1956); Rosenblum v. New York Cent. R. Co., 162 Pa. Super. 276, 57 A.2d 690 (1948); Lauffer v. Vial, 153 Pa. Super. 342, 33 A.2d 777 (1943). The Court further held that "[t]he absence of a 'signed statement' vesting authority to execute the mortgage in another renders the mortgage unenforceable. Nespoli, 1998 Bankr. LEXIS 1666 at *5, citing Del Borrello v. Lauletta, 455 Pa. 350, 352, 317 A.2d 254, 255 (1974) (A lease agreement with an option to buy, unilaterally executed by one spouse, was not binding on other spouse despite non-signing spouse's continued collection of rent following death of signing spouse.); see also Ripple v. Pittsburg Outdoor Advertising Corp., 280 Pa. Super. 121, 421 A.2d 435 (Pa. Super. 1980) (Because wife had not executed lease and husband did not have written authorization to act on her behalf, a five-year lease was converted to a year-to-year lease because the Statute of Frauds applied to leases in excess of three years.), citing Del Borrello, 455 Pa. at 352. Also, the United States District Court for the Western District of Pennsylvania held that a mortgage of an entireties property is invalid without both spouses' signatures, albeit prior to the Evans decision. See Swope v. Wash. Mut. Home Loan, Inc., (In re Johnston), 2007 U.S. Dist. LEXIS 98097, *5-7 (W.D. Pa. 2007) (District Court accepts bankruptcy court's conclusion

"that the mortgage was invalid as the husband's attempt to mortgage the property without the accompanying conveyance of his then-wife was improper and constituted an invalid encumbrance on the real estate."); see also Swope v. Wash. Mut. Home Loans, Inc. (In re Johnston), 333 B.R. 724, 2005 Bankr. LEXIS 2183 (Bankr. W.D. Pa. 2005) (Mortgage was invalid and debtor could not have executed on the property as spouse had executed neither the note nor the mortgage.).

Viewing the evidence in the light most favorable to the Plaintiff, she was unaware of, did not consent to, and did not authorize the mortgage, despite the benefit of the mortgage inured to both spouses. Here, making all inferences in favor of Plaintiff, she did not know her husband was taking out the loan, in no way consented to the mortgage, and someone forged her initials and signature. (Doc. 19-3, pp. 28-32). Defendant sets forth that Plaintiff authorized her husband to manage their mortgage loans. (Doc. 19, p. 13) and (Doc. 23, pp 4-5, n.5). (citing Plaintiff's deposition). However, the exact testimony, read in a light most favorable to Plaintiff, suggests that Plaintiff required her husband to discuss any changes in financing with her. (Doc. 19-3, p. 10) ("If it was discussed, those three (prior loans) were discussed."). Plaintiff also testified that she did not become aware of the loan until 2010. (Doc. 19-3, pp. 10-11). Here, like in Nespoli, it is alleged that the document is forged and no agency relationship has been established. See Nespoli, 1998 Bankr. LEXIS 1666 at *4-5. Accordingly, Defendant's motion for summary judgment based on the contention that Plaintiff authorized her husband to establish the mortgage will be denied as the evidence viewed in the light most favorable to Plaintiff negates this premise.

Defendant's second argument is that it is entitled to an equitable mortgage or equitable

lien because Plaintiff has been unjustly enriched and Plaintiff intended there to be a mortgage on the property. (Doc. 19, pp. 13-18) & (Doc. 23, pp. 8-9). Defendant also argues that it is an innocent assignee and a holder in due course pursuant to 13 Pa. C.S.A. §3302 and therefore, is entitled to an equitable lien. (Doc. 23, p. 10).

"A court, exercising its equitable powers, may impose an equitable mortgage or equitable lien on a property under the proper circumstances." Phillips v. Resolution Trust Corp., 1995 U.S. Dist. LEXIS 5057, *6 (E.D. Pa. 1995), citing Gladowski v. Felczak, 346 Pa. 660, 31 A.2d 718, 720 (Pa. 1943); General Casmir Pulaski Bldg. & Loan Ass'n v. Provident Trust Co., 338 Pa. 198, 12 A.2d 336, 338 (Pa. 1940). "An equitable lien arises from a contract indicating an intent to make certain property security for an obligation or from a situation which otherwise would result in unjust enrichment." Id., citing R.M. Shoemaker Co. v. Southeastern Pennsylvania Economic Development Corp., 275 Pa. Super. 594, 419 A.2d 60, 63 (Pa. Super. Ct. 1980). When such a lien is based on intent of the parties, there must be "an obligation owing by one person to another, a res to which that obligation attaches, and an intent by all parties that the property serve as security for the payment of the obligation." Id. "[A] court creates an equitable mortgage to give effect to an intention of the parties to create a mortgage, typically where a defect in an instrument renders an intended mortgage invalid; it creates an equitable lien regardless of the intent of the parties, as a remedial device to protect a party against inequitable loss and to prevent unjust enrichment." Id. at *6-7, citing HCB Contractors v. Rouse & Associates, Inc., 1992 U.S. Dist. LEXIS 9916, No. 91-5350, 1992 WL 176142 at * 8 (E.D. Pa. July 13, 1992).

Drawing all inferences in the light most favorable to the non-movant, Plaintiff had no

knowledge of or intent to enter into this mortgage. (Doc. 19-3, p. 10). Accordingly, the intent required for an equitable mortgage is missing here. See Phillips, 1995 U.S. Dist. LEXIS 5057 at *7-8 (Intent is required at a specific transaction at a specific time and "cannot be transferred from one transaction in which the mortgagor participated to another transaction of which she had no knowledge or intent."). Accordingly, the determination required is whether an equitable lien is appropriate. Such a determination requires an analysis of whether Plaintiff was unjustly enriched.

Defendant argues that the loan in question paid off three prior loans for which Plaintiff was personally responsible and removed three prior mortgages on the property putting in place one lower interest loan. (Doc. 19, p. 15) and (Doc. 23, p. 11). Defendant argues that it would be inequitable to allow Plaintiff to retain the home built on the property without having some repayment obligation and without Defendant having a secured interest in the property. Id. Defendant believes the Pennsylvania Supreme Court decision of Stanko v. Males, 390 Pa. 281, 135 A.2d 392 (1957) is controlling. (Doc. 19, pp. 15-16). In Stanko, the plaintiff-husband was unaware of a forged, deliberately fraudulent deed executed by his wife granting the property to defendants, a daughter and son-in-law. Stanko, 135 A.2d at 393-95. The Court canceled the deed but, being as there was no evidence either defendants were guilty of bad faith or fraud, based on the doctrine of equity ordered the plaintiff to pay the defendants "an amount equal to the tax and mortgage expenditures made by them, plus the expenditures made for the improvement and necessary maintenance and insurance of plaintiff's property to the extent that the property was benefited (sic) thereby, less the value of the use made of the property and the rents received therefrom by the defendants." Id. at 395.

While the Stanko case is certainly applicable in applying the concepts of equities to the parties, it is not controlling on placing a lien, which would be the equivalent to reinstating the allegedly forged mortgage, on entireties property. Stanko more aptly involves "improvements" or enhancements to a party's real property. Defendant does not cite to and this Court has not found precedent for placing an equitable lien that amounts to enforcing a forged, fraudulent mortgage.[3] In fact, what was discovered was quite the opposite: "[t]here is a line of cases in Pennsylvania in which mortgagees were denied equitable liens where the underlying mortgage documents were forged or otherwise were executed without the authority of the record owner." Fowler, 425 B.R. at 205 n.66. The Bankruptcy Court for the Eastern District of Pennsylvania noted that "in the situation where the mortgage is void because it has been executed without the knowledge or consent of the mortgagor, Pennsylvania adopts the minority view declaring that the mortgagee is a volunteer and is not entitled to [an equitable remedy]." Id., citing First Fed. Savings & Loan Ass'n v. Reedy, 35 Pa. D. & C.2d 299, 304, 54 Luz. Legal Reg. Rep. 101 (Luzerne Cty. C.P. Ct. 1964) (emphasis added) (citing Campbell v. Foster Home Ass'n, 163 Pa. 609, 30 A. 222, 35 Week. Notes Cas. 293 (Pa. 1894)); see also Phillips v. Resolution Trust Co., 1995 U.S. Dist. LEXIS 5057 (E.D. Pa. Apr. 19, 1995); Williard v. Millersburg Trust Co., 48 Pa. D. & C.2d 149, 153-56 (Dauphin Cty. C.P. Ct. 1969). "[I]n the situation where the mortgage is

---

[3]Defendant cites a Luzerne County Court of Common Pleas case involving a forged mortgage as to one spouse who benefitted from the mortgage but the Court noted "it appears that we are constrained by the appellate courts from granting equitable relief" as it held the mortgagee as a volunteer, thus not entitled to subrogation. First Federal Savings & Loan Ass'n v. Reedy, 35 Pa. D. & C.2d 299, 305 (Luzerne Cty. C.P. Ct. 1964). The Court acknowledged that "[t]he greatest difficulty confronting the courts in applying the equitable doctrine of subrogation to the lien of a prior encumbrance, in favor of one furnishing money to discharge the lien, is the equitable rule stated above that subrogation will not be decreed in favor of a mere volunteer who, without any moral or legal duty to do so, pays the debt of another." Id. at 303.

void because it has been executed without the knowledge or consent of the mortgagor, Pennsylvania adopts the minority view [as indicated in Campbell v. Foster Home Ass'n] declaring that the mortgagee is a volunteer and not entitled to subrogation." Fowler, 425 B.R. at 205, citing Reedy, 35 Pa. D. & C.2d at 303-04.

An equitable lien should be entered if required by unjust enrichment. Phillips, 1995 U.S. Dist. LEXIS 5057 at *6. This requires "a fact-intensive 'balancing of the equities'" which includes " inter alia, a consideration of the relative culpability and innocence of the parties." Fowler v. Rauso, (In re Fowler), 425 B.R. 157, 208 (Bankr. E.D. Pa. 2010), citing 48 Pa. D. & C.2d at 157. 67; Park v. Greater Delaware Valley Sav. & Loan Ass'n, 362 Pa. Super. 54, 523 A.2d 771, 775 (Pa. Super. Ct. 1987). Here, while Plaintiff may have benefitted from the loan in question and that loan would not have been obtainable without a mortgage, viewing the evidence in the light most favorable to her, the mortgage was forged and is a fraud. Defendant, a mortgage bank, purchased a loan in a husband's name and a mortgage on equities property in both spouses' names which, for purposes of Defendant's motion, was forged and was not authorized by the wife. Balancing the equities, Defendant has the note it purchased which is enforceable against Scott W. Herb. Plaintiff's property should not be encumbered by a forged mortgage which she did not authorize. See Fowler, 425 B.R. at 205 n.66. This Court will not order, at this summary judgment stage, that equity requires that the forged, fraudulent mortgage be enforced.

## IV. CONCLUSION

There is a question of fact at issue as Plaintiff has testified that she did not sign the mortgage in question and her husband declares that she did initial and sign it, albeit after the closing was held. Accordingly, Plaintiff's motion for summary judgment based on the premise

that the mortgage is forged is denied. Plaintiff's motion for summary judgment based on the mortgage not being properly notarized will also be denied as such an error does not void the mortgage as to the mortgagor and mortgagee.

Defendant's motion for summary judgment based on the entireties presumption will be denied as the facts viewed in the light most favorable to Plaintiff establish that Plaintiff's husband was not authorized to execute the mortgage on Plaintiff's behalf. Defendant's summary judgment motion for an equitable lien will also be denied as equity requires the alleged forged mortgage not be enforced.

A separate Order will be issued.

_____
United States District Judge

Date: July 8, 2013